IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

UNITED STATES OF AMERICA

v.                                                              NO. 2:23-CR-069-Z

RACHEL LYNN WADDELL (05)
T BLUE BLOOMER (06)

## GOVERNMENT'S TRIAL BRIEF

The United States of America ("Government") files its Trial Brief as follows:

Rachel Lynn Waddell and T Blue Bloomer are charged with Conspiracy to

Distribute and Possess with Intent to Distribute Fentanyl (Count One). The Government

intends to call the following witnesses in the following order:[1]

1.  Vernon Wilson
2.  Randy Mincher
3.  Royce Matthew Bushey
4.  Christopher Cruz
5.  Ricky Lee Matthews
6.  Jeremy Hoffman
7.  Jay Hopenwasser
8.  Paul Galat
9.  Randle Chance Harlan (possible)
10. Matt Stockstill (possible)
11. Dorthy Sparks (possible)
12. Anthony Kennedy (possible)
13. Douglas Richardson (possible)
14. Christopher Brown (possible)
15. Fernando Burga (possible)
16. Richard Anderson (possible)

---

[1] In making this representation, the government does not intend to waive its right to revise its trial strategy regarding its witness order or the proposed content of their testimony.  The government is simply making a good-faith effort to inform the Court and the defendant of what it currently expects to present.

**Rachel Lynn Waddell, et al.**
**Government's Trial Brief – Page 1**

17. Erick Quirk (possible)
18. Eric Skaggs (possible)
19. Randy Rice (possible)
20. Kristopher Koval (possible)
21. Kerry Blackerby (possible)

The Government will prove the charge in the one-count superseding indictment beyond a reasonable doubt as discussed below.

**Count One: Conspiracy to Distribute and Possess with Intent to Distribute Fentanyl**

In his role as an expert witness, DEA TFO Vernon Wilson will testify as stated in the Government's Designation of Expert Witnesses.  (Dkt. 294.)  Under the Federal Rules of Evidence, a qualified expert witness may offer reliable opinion testimony if specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue.  Fed. R. Evid. 702. "The rule is well-established that an experienced narcotics agent may testify about the significance of certain conduct or methods of operation unique to the drug distribution business, as such testimony is often helpful in assisting the trier of fact understand the evidence." *United States v. Washington*, 44 F.3d 1271, 1283 (5th Cir. 1995).  In the context of drug-related criminal trials, the Fifth Circuit has allowed law enforcement expert witnesses to "give background testimony about 'the significance of certain conduct or methods of operation unique to the drug business.'" *United States v. Morin*, 627 F.3d 985, 995 (5th Cir. 2010) (citing *United States v. Sanchez-Hernandez*, 507 F.3d 826, 831 (5th Cir. 2007)).

"Indeed, courts have consistently held that DEA agents and police officers may testify as experts regarding the purity, weight and prices of drugs used for personal

**Rachel Lynn Waddell, et al.**
**Government's Trial Brief – Page 2**

consumption versus distribution because such testimony concerns specialized knowledge about drug trafficking, an area with which most jurors are unfamiliar." *United States v. Potts*, No. Crim. A. 00-060, 2000 WL 943219, at *4 (E.D. La. July 7, 2000). An experienced narcotics agent may testify about the street value of a drug. *United States v. Ikner*, No. 02-60125, 2002 WL 31415257, at *6 (5th Cir. Oct. 10, 2002).

Testimony concerning methods of operation unique to the drug business "may permissibly help a jury understand the significance of implications of other evidence presented at trial." *United States v. Gonzalez-Rodriguez,* 621 F.3d 354, 364 (5th Cir. 2010). In *Gonzalez-Rodriguez*, the Court found the following expert testimony permissible: (1) that most large quantity methamphetamine is produced in Mexico; (2) that drug organizations use couriers to transport drugs to the United States for distribution; (3) that drug organizations often transport drugs by hiding them in seemingly legitimate places; (4) that couriers normally do not handle drugs; (5) that a courier probably would not have been the person who hid the methamphetamine in the grapefruit; and (6) that the testifying agent therefore was not surprised when he did not find the defendant's fingerprints on the bundles of methamphetamine. *Id. at* 365. The Court further held that "[t]his testimony discusses the basic business model for running large quantity methamphetamine across the border from Mexico the United States. *Id*. "This is specialized information that would help a jury understand why the methamphetamine was hidden the way it was, and also rebut [the defendant's] emphasis that his fingerprints were not found on the methamphetamine." *Id*.

**Rachel Lynn Waddell, et al.**
**Government's Trial Brief – Page 3**

TFO Wilson will also testify about code words used by drug organizations, which Waddell, and others, used in text message conversations. "Because 'drug dealers often camouflage their discussions' with code words, 'expert testimony explaining the meanings of code words may assist the trier of fact to understand the evidence or to determine a fact in issue.'" *United States v. Haines*, 803 F.3d 713, 726 (5th Cir. 2015) (citing *United States v. Dukagjini*, 326 F.3d 45, 52 (2d Cir. 2003)).

Amarillo Police Department Officer Randy Mincher will testify about the investigation into a large-scale fentanyl distribution conspiracy that operated primarily in Amarillo, Texas. Officer Mincher will testify about the start of the investigation, which began in July 2023 with the search of Rebecca Schmitkons and Robert Witt's residence. From cell phone records obtained because of that search, Officer Mincher determined that an Albuquerque, New Mexico resident, Gary Eugene Carlisle, was Schmitkons and Witt's source of supply for counterfeit M-30 fentanyl pills. Cell phone records and interviews also revealed that Rachel Waddell was involved in the fentanyl distribution conspiracy.

Officer Mincher will testify that Carlisle was arrested in Amarillo, Texas, on August 9, 2023. Officers seized two cell phones during a search of Carlisle's hotel room. Officer Mincher will testify that a search warrant was obtained for Carlisle's cell phones. During a manual search of Carlisle's phone, Officer Mincher located text messages between Carlisle and Waddell indicating that Carlisle was supplying Waddell with

fentanyl pills and powder.  Officer Mincher also located CashApp transactions where both Waddell and Bloomer sent money to Carlisle.

Officer Mincher will testify about a traffic stop that he and members of the APD PACE unit performed on August 27, 2023, involving Waddell and Katherine Valencia-Morales.  Officer Mincher learned that Waddell traveled to Oklahoma City, Oklahoma, in a silver Jeep Cherokee and was returning to Amarillo.  PACE unit officers conducted a traffic stop of the vehicle outside Claude, Texas.

Officers conducted a felony stop of the vehicle, ordering the driver and passengers out of the vehicle one at a time.  Waddell was the driver of the vehicle.  The front seat passenger was Landon Prather and the back seat passengers were Katherine Valencia-Morales and Britania Velarde.  Waddell was arrested for outstanding felony warrants.

During the traffic stop, officers observed drug paraphernalia inside the vehicle. Based on that paraphernalia, officers conducted a probable cause search of the vehicle. During the search, Officer Mincher observed a small foil bundle in the driver's seat. Upon opening the bundle, Officer Mincher observed several grams of compressed fentanyl powder.  Other officers located drugs, paraphernalia, and a digital scale inside the vehicle.

Officer Mincher conducted a roadside interview with Waddell on August 27, 2023.  Officer Mincher will testify that Waddell admitted to distributing fentanyl pills to several individuals she referred to as "customers" in Amarillo, Texas.  Waddell further

admitted to getting 5,000 fentanyl pills from her source of supply, Gary Carlisle. Waddell also admitted to sending Carlisle money through CashApp.

Officer Mincher will testify that Waddell admitted that her boyfriend, T Blue Bloomer, also obtained fentanyl pills from Gary Carlisle.  Waddell admitted that she and her passengers traveled to Oklahoma to obtain fentanyl powder.  Waddell stated that Valencia-Morales had the "connect" in Oklahoma and Waddell gave Valencia-Morales $700 to purchase five grams of fentanyl powder for Waddell.  Officer Mincher told Waddell that a quarter size chunk of fentanyl powder was in Waddell's vehicle.  Without prompting, Waddell stated that it was on the driver's seat of the vehicle.

Officer Mincher will testify that Waddell consented to a search of her cell phone. Officer Mincher located an application on the phone called Pilleye, which allows users to take photographs of pills and the application counts the pills.  During a review of the application, Officer Mincher located hundreds of photographs and a running pill total of over 35,000 pills.

Officer Mincher will testify that search warrants was obtained for Waddell and Valencia-Morales's cell phones that were seized on August 27, 2023.  Corporal Royce Matthew Bushey will testify that he downloaded the cell phones using Cellebrite.  Officer Mincher will testify that he reviewed the phone downloads and did a manual search of Waddell's phone.

During a review of Waddell's cell phone, Officer Mincher located text messages in which Waddell negotiated prices and quantities for fentanyl pills that she distributed.

The text messages further revealed that Waddell was working with Bloomer to distribute fentanyl pills to several customers. In the messages, Waddell instructed Bloomer how many pills to deliver to each customer and what prices to charge. Waddell described her pill distribution operation as a "business," informing Bloomer in a text message that she had worked hard to grow her business. In another text message, Waddell told Bloomer that they were the only fentanyl distribution business in Amarillo at the time.

Officer Mincher located text messages from at least twenty phone numbers that contacted Waddell for fentanyl pills or powder. Officer Mincher also located text messages between Waddell, Valencia-Morales, and Velarde where the three discussed traveling to Oklahoma to obtain fentanyl powder. Officer Mincher will testify about code words for fentanyl pills and powder that Waddell admitting to using in her text messages. *United States v. Haines*, 803 F.3d 713, 729 (5th Cir. 2015) (An officer may testify as a lay witness to the meaning of certain code words used in a drug ring based on his personal perceptions.)

Officer Mincher will testify that he also reviewed text messages located on Valencia-Morales's cell phone. APD Officer Chance Harlan will testify that he conducted a manual review of the cell phone and photographed evidence located on the phone. APD Officer Christopher Cruz will testify that he is a bilingual Spanish and English speaker, and that he translated the messages located on the phone into English.

Officer Mincher will testify that Valencia-Morales communicated with the fentanyl source of supply in Oklahoma City.  He will also testify that the messages show that Valencia-Morales and Waddell obtained fentanyl powder while in Oklahoma.

Officer Mincher will testify that a search warrant was executed on Waddell's residence, located at Amarillo, Texas, on August 28, 2023.  Officer Mincher will testify that the tile countertop in Waddell's kitchen matches the countertop observed in many of her Pilleye application photographs.  He will also testify that officers located a large amount of baggies inside the residence that were identical to some of the baggies depicted in Waddell's Pilleye photographs.

APD Officer Ricky Lee Matthews will testify that he participated in the traffic stop of Waddell on August 27, 2023.  Officer Matthews will testify that he took photographs of the evidence located in Waddell's vehicle.  He will also testify that he conducted a traffic stop of T Blue Bloomer's vehicle on August 28, 2023.  Officer Matthews will testify that he seized a cell phone and fentanyl powder from Bloomer during the stop.  Officer Matthews will testify that he obtained a search warrant for Bloomer's cell phone, which was downloaded by Cpl. Bushey.  Officer Matthews will testify about photographs he took of Bloomer's cell phone during a manual search of the phone.

Officer Mincher will testify about a traffic stop that he performed on October 2, 2023, of Waddell's vehicle on Interstate 27 just south of Amarillo.  Waddell had a federal warrant for her arrest.  Officer Mincher will testify about the roadside interview he

**Rachel Lynn Waddell, et al.**
**Government's Trial Brief – Page 8**

conducted with Waddell.  He will also testify about the search he conducted of Waddell's vehicle.  During the search, Officers Mincher and Harlan located a baggie of M-30 fentanyl pills inside the center console.

Officer Mincher will testify that following the October 2, 2023, traffic stop, Waddell was transported to the Randall County Sheriff's Office for further interview.  He will testify about Waddell's statements made during the interview.

Officer Mincher will testify that T Blue Bloomer was arrested for a federal warrant on October 4, 2023.  Bloomer consented to a search of his cell phone during an interview with officers.  Officer Mincher will testify about the contents of Bloomer's phone.  Specifically, he will testify that Waddell's Pilleye application account was accessible on Bloomer's phone.  The application revealed that approximately 10,000 additional pills were counted on the Waddell's Pilleye application between August 27, 2023, and October 4, 2023.

The evidence seized during the August 27, 2023 and October 2, 2023, traffic stops was maintained at the Amarillo Police Department.  Drug Enforcement Administration (DEA) Task Force Officer (TFO) Jeremy Hoffman will testify that he took custody of the evidence seized during the investigation and he sent the drug evidence to the DEA South Central Laboratory for testing.

Drug Enforcement Administration (DEA) Forensic Chemist Jay Hopenwasser will testify that one of the substances seized from Waddell's vehicle on August 27, 2023, was, in fact, N-Phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (Fentanyl), a

**Rachel Lynn Waddell, et al.**
**Government's Trial Brief – Page 9**

Schedule II controlled substance, with a combined net weight of approximately 3.706 grams.

Drug Enforcement Administration (DEA) Forensic Chemist Paul Galat will testify that one of the substances seized from Waddell's vehicle on October 2, 2023, was, in fact, N-Phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (Fentanyl), a Schedule II controlled substance, with a total net weight of approximately 2.895 grams.

At the conclusion of the trial the Government will ask the jury to return a guilty verdict as to count one.

Respectfully submitted,

LEIGHA SIMONTON
UNITED STATES ATTORNEY

*s/ Anna Marie Bell*
ANNA MARIE BELL
Assistant United States Attorney
New Mexico State Bar No. 12501
500 South Taylor, Suite 300
Amarillo, Texas 79101
Telephone:    806-324-2356
Facsimile:    806-324-2399
E-mail:        anna.bell@usdoj.gov